**In re LION CAPITAL GROUP, et al., Debtors.**

**Bankruptcy No. 84 B 10668 (HCB).**

United States Bankruptcy Court,
S.D. New York.

Oct. 18, 1984.

Anderson, Russell, Kill & Olick, New York City, for applicant; James P. Heffernan, and Richard Herman, New York City, of counsel.

Stanley T. Lesser, New York City, Trustee.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Trustee; Milton Sherman, New York City, of counsel.

Chester B. Salomon, P.C., New York City, for debtor-in-possession.

Weil, Gotshal & Manges, Cowan, Liebowitz & Latman, P.C., New York City, for Bradford Trust Co.; Richard P. Krasnow, Jeff Friedman, Robert Bernstein, New York City, of counsel.

The Office of the U.S. Trustee for the Southern Dist. of N.Y., by Cornelius Blackshear, U.S. Trustee, S.D. of N.Y.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The Official Committee of Municipal Entities and School District Creditors (the "Committee") has moved this Court for an order pursuant to § 1103 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) (1978) (the "Code") for an order authorizing the Committee to retain the law firm of Anderson, Russell, Kill & Olick P.C. (the "Anderson Firm") as its counsel in these proceedings.

I

This case was commenced by the filing of a voluntary petition under Chapter 11 of the Code on May 2, 1984. An operating trustee ("Trustee") was appointed immediately. Bradford Trust Company ("Bradford") filed a complaint on May 31, 1984 against the Trustee, certain municipalities, school districts and, ultimately, against two other entities seeking to establish, pursuant to § 506 of the Code, its alleged lien as against certain proceeds held in an amount at the Federal Reserve Bank of New York jointly in the names of the Trustee and Bradford.

Those proceeds were derived from the liquidation, upon Bradford's consent and order of this Court dated May 10, 1984, of certain United States Treasury obligations held by Bradford on the date of the filing of the petition. Most, if not all, of those obligations were the subject of pre-petition open repurchase transactions between Lion Capital and the municipalities and school districts named in Bradford's complaint.

In their answer to the complaint the municipalities and school districts, through the Anderson Firm as their counsel, asserted several counterclaims claiming principally that Bradford's claim should be equitably subordinated to their claims and further seeking damages against Bradford for violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 (17 C.F.R. § 240.106–5) promulgated thereunder. The Trustee, in his answer, counterclaim and cross-claim asserted that the claims of Bradford and the defendant municipalities and school districts to the proceeds were subordinated to his interests as Trustee. Discovery is proceeding in that adversary proceeding and trial is to commence on November 12, 1984.

On May 17, 1984, this Court heard a motion by Greenburg Central School District No. 7 for the appointment of a special committee of creditors pursuant to § 1102(a)(2) of the Code. Over the objection of the Trustee and Bradford that governmental entities could not serve on a Creditors' Committee, this Court held that the municipalities and school districts claimants in this case could so serve because, *inter alia,* the provision of § 1102(b)(1) that only "persons" could "ordinarily" serve on a committee was not an absolute bar and because the claims of municipalities and school districts were not tax claims entitled to priority. Seeing, at

that time, no need for a special committee since the United States Trustee had not attempted to form an official creditors' committee, this Court denied the motion without prejudice but directed the United States Trustee to include municipalities and school districts on the official committee.

With the United States Trustee having been unable to form an official committee due to the small amount of debt owed to other unsecured creditors, the municipalities and school districts, having organized themselves into an unofficial committee (the "Unofficial Committee"), sought anew the appointment of a special committee. The Anderson Firm appeared in support of the motion as counsel. In an opinion entered on June 27, 1984, just before the statutory hiatus in the jurisdiction of the bankruptcy courts, this Court granted the motion. In so ruling, the Court observed that the great need for organized official creditor representation in this case, the inability of the United States Trustee to form an official creditors' committee and the heavy preponderance of the claims of municipalities and school districts (over 90%) in the calculus of unsecured debt commanded the appointment of an official special committee. On July 23, 1984, after the status of this Court had been clarified, an Order was entered implementing that decision by directing the United States Trustee to appoint such a committee. On August 11, 1984, the United States Trustee appointed eleven members of the Unofficial Committee. Those municipal entities and school districts constitute the Special Committee. Representatives of the Byram Hills Central School District and of Greenberg Central School District No. 7 serve as its spokesmen or co-chairman. They have served in the same capacity with respect to the Unofficial Committee. Similarly, the Special Committee now seeks permission to engage the Anderson Firm as its counsel *nunc pro tunc* to August 11, 1984.[1]

It is undisputed that the Anderson Firm does not now represent any single municipality or school district claimant in this case. Since the filing of the answer by all the municipality and school district claimants, it has represented them jointly in the adversary proceeding. Consistent with its representation of the municipalities and school district claimants as a group, the Anderson Firm has advised them that it will not serve as counsel to any one of them in the event that disputes arise among them.

It is also undisputed that the interests of the Special Committee and of the larger Unofficial Committee are the same. The Special Committee is composed only of entities who are members of the Unofficial Committee.

## II

With the case in this posture and insofar as the motion seeks only the retention of the Anderson Firm *nunc pro tunc* to August 11, 1984, the Trustee has no objection to it.[2] Bradford, however, does object to the retention on two grounds: (i) that the appointment is sought because the Special Committee desires to utilize estate funds to pay counsel fees incurred in connection with the adversary proceeding brought by Bradford and (ii) that the retention is precluded by § 1103(b) of the Code.

The first of these objections seeks to revisit this Court's ruling of June 27, 1984 and is without merit. In ruling on the same objection, it was there noted that the

1. In its application the Special Committee sought to engage the Anderson Firm *nunc pro tunc* to May 14, 1984, the date of the formation of the *ad hoc* committee. At the hearing held on October 2, 1984, the application was modified to seek appointment *nunc pro tunc* only to August 11, 1984.

2. The Trustee does object to that portion of the order submitted by the special committee which would seek to establish terms of payment of interim fees. At the hearing, it was ruled that the question of means of payment was not properly before the Court and would not be considered until such later time as appropriate.

counterclaims asserted by the municipal and school district claimants may benefit the estate at least insofar as they seek to defeat Bradford's asserted lien. Fees for the achievement of such a benefit to the estate are permissible. *See* § 503(b)(3) and (4); H.R.Rep. No. 95–595, 9th Cong. 1st Sess. 355 (1977); Sen.Rep. No. 95–989, 95th Cong.2d Sess. 66–67 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787. Also, the pursuit of those counterclaims may be of material assistance to the Trustee in the pursuit of his counterclaim, particularly in view of the expedited, complex and extensive discovery contemplated in the adversary proceeding and the lengthy trial that the trial of the adversary proceeding entails. The objection is also premature: no request for payment of such fees is before the Court.

The second objection raises different considerations involving interpretation of § 1103(b) of the Code. That section, prior to its amendment by P.L. 98–353 (July 10, 1984) provides:

A person employed to represent a committee appointed under Section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the case.

In amending § 1103(b), Congress added the following sentence:

Representation of one or more creditors as represented by the committee shall not per se constitute the representation of an adverse interest.

As provided in § 553(a) of P.L. 98–353, this amendment, like most of the substantive amendments to the Bankruptcy Code so enacted, shall become effective to cases filed on or after October 8, 1984. Bradford thus asserts that the Anderson Firm's retention is to be tested by § 1103(b) without regard to the amendment.

In so asserting, it cites four cases for the proposition that § 1103 is to be applied *per se*, seemingly without regard to whether the engagement entails representation by the attorney of adverse interests or the possibility of conflict of interests. In three of the cases, however, the Court considered exactly that issue. In *In re Saxon Industries, Inc.*, 29 B.R. 320, 10 B.C.D. 573 (Bankr.S.D.N.Y.1983), this Court approved an application by a committee of equity security holders to engage an accountant over the objection that the committee should rely on the work of accountants engaged by the creditors' committee. In so holding, this Court observed that the purpose of § 1103(b) was "to prevent even the possibility of conflicts of interest," 29 B.R. at 321, and ruled:

In the instant case, the two committees are separate and distinct entities with the members of the unsecured creditors and equity creditors class[es] possessing variant priorities and interests with respect to their interests to the debtor. Thus, an accountant retained by the Creditors' Committee cannot also represents the interests of the Equity Committee.

*Ibid.*

To the same effect is *Matter of Combustion Equipment Associates,* 8 B.R. 566, 7 B.C.D. 188, 3 C.B.C.2d 847 (Bankr.S.D.N.Y. 1981). There the creditors committees for a parent and subsidiary, both in bankruptcy, sought permission to enter into an arrangement whereby they could assign legal work to counsel for one or more of the members who would also continue to represent the individual creditor. In denying the application, this Court relied on the legislative history of § 1103(b) where it was observed that "If the creditors on a committee split on a vote, the attorney for a particular creditor on the committee may be required to represent both the committee's position and his creditor-client's position, which may be directly contrary to the committee's position." 8 B.R. at 568 *quoting* H.R.Rep. No. 95–595, 9th Cong., 1st Sess. 104–5 (1977), U.S. Code Cong. & Admin. News 1978, p. 6066. The Court then noted that the agreement for which approval was sought did "not deal with [this] problematic situation...." *Ibid.*

Similarly, in *Matter of Proof of the Pudding, Inc.*, 3 B.R. 645, 6 B.C.D. 338, 1 C.B.C.2d 1043 (Bankr.S.D.N.Y.1980), the creditors committees in three separate but related Chapter 11 cases sought to employ the same counsel. In rejecting the application, the Court observed that "a conflict of interest would inevitably arise once Finkel, Goldstein & Berzow, as counsel for each of the creditors' committees, started performing its duties for the respective committees." 3 B.R. at 647. The Court further observed that such triple representation would also raise an appearance of impropriety under Canon 9 of the Canons of Ethics. *Id.* at 648.

Each of these cases contains *dicta* to the effect that § 1103(b) provides an absolute bar to multiple representation. The Court in *In re Broadcast Management Corp.*, 36 B.R. 519, 11 B.C.D. 789, 10 C.B.C.2d 40 (Bankr.S.D.Ohio 1983), the fourth case cited, seized on that *dicta* in disallowing an attorney compensation for 8.66 hours of work on behalf of a creditors committee that was performed while the attorney also represented a creditor. Noting that the purpose of the section was to prevent potential conflicts of interest and to avoid the appearance of impropriety, the court, relying on the cases discussed above, stated that § 1103(b) "allows for no exceptions." *Id.* at 520.

Here, there is no assertion that the Unofficial Committee and the Special Committee have "variant priorities and interests with respect to their interests to the debtor." *Saxon*, 29 B.R. at 321. Indeed, Bradford asserts just the opposite, claiming that the Special Committee and the Unofficial Committee have the same interests and that appointment of counsel is sought to benefit the municipalities and school districts. Nor is it claimed that this is a case involving an appearance of impropriety. As Bradford has argued on this motion, the interests of each are the same in maximizing the recovery to the municipal and school district claimants.

For the same reason, this is not a case of potential conflict where the attorney may be required at some later time to represent a committee and a creditor-client having opposite positions. *Matter of Combustion Equipment Associates*, 8 B.R. at 568. In its opposition papers Bradford hypothesized that such a potential conflict would arise upon distribution of the proceeds if the municipalities and school districts are successful on their counterclaims. At the hearing on this motion, however, it accepted the representation of the Anderson Firm that that firm represented no individual creditor. Bradford, at the hearing on this motion, thus grounded its opposition on the assertion that § 1103(b) bars the Anderson Firm from representing both the special committee and the unofficial committee without regard to the existence of a potential conflict or the possibility of representation of potentially variant interests.

Such a possibility, the legislative history reveals, is the *raison d'etre* for § 1103(b). H.R.Rep. No. 95–595 at 401. This Court applied exactly that focus in *Saxon*, *Combustion Equipment* and *Proof of the Pudding*, where that possibility was discussed and analyzed. That approach of examining the substance of the dual representation, as opposed to merely its existence, has now been confirmed by Congress in disapproving the *per se* rule adopted by the court in *Broadcast Management* and urged by Bradford here.

### III

Our task is to construe this statute in its applicability to the facts of this case. In that exercise, the words of the statute are to be applied but not without reference to the legislative history to determine the meaning Congress sought to attach to the language it employed. See, *e.g.*, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, (1976). Examination of that history reveals that Congress sought to "discourage the practices surrounding election of creditors committees

today and to avoid a serious potential for conflict of interest..." H.R.Rep. No. 95–595 at 104, U.S.Code Cong. & Admin.News 1978, p. 6066. There is no indication that it sought to bar representation where that potential neither exists nor is on the horizon.

The recent amendment more than confirms that impression. It indicates that Congress intended that a *per se* approach is unwarranted, does not serve the purposes sought to be advanced and unnecessarily infringes on the ability of a committee to engage counsel of its choice.

■ That indication, particularly with respect to the first extensive substantive amendments passed after enactment of a comprehensive statute,[3] has persuasive value. *Bell v. N.J. & Pa.*, 461 U.S. 773, 103 S.Ct. 2187, 2194, 76 L.Ed.2d 312 (1983); *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980); *National Labor Relations Board v. Bell Aerospace Co. Div. of Textron Inc.*, 416 U.S. 267, 274, 94 S.Ct. 1757, 1761, 40 L.Ed.2d 134 (1974). *Accord, Glidden Co. v. Zdanok*, 370 U.S. 530, 541, 82 S.Ct. 1459, 1468, 8 L.Ed.2d 671 (1962); *cf. Universities Research Ass'n v. Coutu*, 450 U.S. 754, 778, 101 S.Ct. 1451, 1465, 67 L.Ed.2d 662 (1981). Particularly is that so where, as here, there is but a relatively short period between the two sessions. Less weight is to be given to construction by Congress of a statute passed many years before. *United States v. Southwestern Cable Co.*, 392 U.S. 157, 170, 88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001 (1968); *Rainwater v. United States*, 356 U.S. 590, 593, 78 S.Ct. 946, 949, 2 L.Ed.2d 996 (1958); *but see Andrus v. Shell Oil Co.*, 446 U.S. 657, 666–672, 100 S.Ct. 1932, 1938–1941, 64 L.Ed.2d 593 (1980) (legislative history in 1930, 1931 and 1956 employed as a guide in interpreting statute enacted in 1920).

That significant weight is not diminished by Congressional failure to make the revision to § 1103(b) applicable to pending cases. The confusion surrounding the enactment of P.L. 98–353, the Bankruptcy Amendments and Federal Judgeship Act of 1984, is well-known. It seems apparent that Congress, other than in addressing the highly charged issue of rejection of labor agreements, P.L. 98–353, Title III, sub-title J and the ability of holders of disputed claims to file involuntary bankruptcy petitions, P.L. 98–353 § 426(b) simply did not focus on the desirability of applying each of several hundred substantive amendments to existing cases.

IV

■ It thus appears from the legislative history, from prior authority in this Court and from the amendment to § 1103(b), that Congress intended substance to prevail over form. Where the representation does not entail an actual or potential conflict of interests or present an appearance of impropriety, § 1103(b) is not to be interpreted to preclude a committee from engaging counsel of its choice and one in whom it has confidence will best serve the interests of the creditors represented by the Committee. The motion should be granted.

Settle order with respect to the appointment of the Anderson Firm.

---

**3.** In 1982, certain amendments to the Bankruptcy Code were enacted. P.L. 97–222 (1982). These, however, were largely technical in nature. The 1984 amendments are far more comprehensive, constituting an in depth review of the Code.