**In the Matter of OLIVER'S STORES, INC., Debtor.**

**Bankruptcy No. 87–01226.**

United States Bankruptcy Court, D. New Jersey.

Nov. 9, 1987.

Crummy, Del Deo, Dolan, Griffinger &
Vecchione by Karen A. Giannelli, Newark,
N.J., for debtor.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland by Paul Kizel, for Trustee.

Clapp & Eisenberg by Karen Bisaccio, Newark, and Hahn & Hessen, New York City, by David Berger, Co–Counsel for the Creditors' Committee.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

Three professionals currently representing the Unsecured Creditors Committee in this Chapter 11 bankruptcy have petitioned the Court for authority to represent individual members of the Creditors' Committee. The three professionals consist of New York general counsel, New Jersey local counsel and a New York accounting firm.[1] Specific authority is sought to file law suits against the debtor's former accounting firm asserting that said accountants improperly performed their duty. The three professionals would continue to represent the Unsecured Creditor's Committee while simultaneously pursuing these new suits. The parties conceded at oral argument that the issues presented in the within matter are of novel impression. None of the attorneys in the matter were able to present to the Court a case directly on point concerning the facts set forth in the within application.

## JURISDICTION

■ The order to show cause filed by the Unsecured Creditors' Committee seeks leave of the Court pursuant to Bankruptcy Code Sections 327 and 1103(b) to allow the professionals employed by the Unsecured Creditors' Committee to proceed with the aforesaid litigation. Inasmuch as this matter involves an interpretation of Bankruptcy Code Sections 327 and 1103, this Court finds that this matter is a core proceeding in that it involves the administration of this estate pursuant to 28 U.S.C. § 157(b)(2)(A).

In addition, Code Section 105 recognizes this Court's jurisdiction to *sua sponte* raise issues and take actions that are necessary to enforce and implement court orders and rules.

## FINDINGS OF FACT

Based upon the facts, circumstances and record before the Court, the following findings of fact and conclusions of law are rendered.

(1) On March 5, 1987, the debtor herein (Oliver's) filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code. Oliver's has been engaged in the retail sale of children's and women's wearing apparel from various locations located throughout the Northeastern United States.

(2) On March 13, 1987, the United States Trustee for the Third Circuit, appointed and designated the Unsecured Creditors' Committee in the within Chapter 11 proceeding. Thereafter this Court, by order dated March 30, 1987, approved the retention of a New York law firm as general counsel to the Unsecured Creditors' Committee and further approved the retention of a New Jersey law firm as local Committee counsel. In the course of the Chapter 11 proceeding, this Court also authorized a New York accounting firm to do the accounting work for the Committee.

(3) The relief sought before this Court is to allow said three professionals currently representing the Unsecured Creditors' Committee to commence separate law suits on behalf of individual creditors who currently serve on the Committee against the accounting firm of Touche Ross.

(4) It is stipulated by the parties that the accounting firm of Touche Ross served as general accountants for the debtor prior to the Chapter 11 filing. The Court specifically finds that the accounting firm of Touche Ross did, in fact, issue financial statements for the debtor for the year ending June 30, 1985, as well as for the year ending June 30, 1986. It is undisputed, based on the

---

1. The terms "professionals" or "general counsel" shall hereafter refer to the three professionals throughout this opinion.

papers before the Court, that sometime in February of 1987, Touche Ross withdrew its certification of the debtor's 1986 financial statement.

(5) The Unsecured Creditors' Committee in this matter consists of nine (9) regular members as well as five (5) ex officio members. In summary, the nine regular members of the Committee consist of four (4) general trade creditors of Oliver's as well as five (5) bank or financial creditors of Oliver's. In its papers before the Court, the Committee asserts that Oliver's has trade debt of approximately $5 million dollars and bank borrowings predating the Chapter 11 of $11 million, for a total of approximately $16 million in unsecured pre-Chapter 11 debt. It is this $16 million dollars which is currently being represented in these proceedings by the aforesaid Unsecured Creditors' Committee and its professionals.

(6) On September 29, 1987, this Court entered an order authorizing the United States Trustee to appoint a trustee to oversee the debtor's Chapter 11 day to day operations. The trustee appeared on the return date of the aforesaid order to show cause before this Court and has stated through his counsel that he does not object to the relief sought by the Committee.

(7) At the request of the Committee on May 22, 1987, this Court entered an order providing for the examination under oath pursuant to Bankruptcy Rule 2004 of a representative of Touche Ross & Co., certified public accountants, the independent auditors of the debtor. There followed a series of appearances and countermotions raising certain objections to the proposed discovery which were litigated before the Court. On June 23, 1987, this Court entered an order to show cause returnable June 26, 1987, brought by the Unsecured Creditors' Committee seeking an order compelling Touche Ross & Co. to show cause why an order should not be issued compelling their examination under Rule 2004 and seeking other relief and sanctions. It is noted that the affidavit of a member of the law firm acting as counsel to the Unsecured Creditors Committee, which is affixed to the order to show cause dated June 23, 1987, reads in part:

7. The Committee was informed by Committee Accountants of highly unusual pre-petition bookkeeping and accounting practices which may have grossly misstated the year-end earnings of Oliver's for the past two years. This together with certain other transactions call into question the reliability of certain persons in the current management of Oliver's. Such practices and acts—in the context of the recently discovered inventory discrepancy of $3.8 million or more, and the withdrawal by Touche of their report on the June 30, 1986 financial statements of Oliver's—require immediate investigation. Under Bankruptcy Code § 1103(c)(2), a primary responsibility of the Committee is to investigate the acts, conduct and financial condition of Oliver's. These examinations have become an urgent necessity.

. . . . .

10. The above-described transactions were reported to the Committee at its first regularly scheduled meeting on May 7, 1987. The Committee directed Committee Counsel and Accountants to meet with the counsel and accountants of Oliver's and request an explanation of such transactions.

. . . . .

18. Since the entry of the Order authorizing the examination of and production of documents by Touche, the Committee has taken eight examinations under Bankruptcy Rule 2004 and 9016. Several of the examinations have produced information that calls the auditing practices of Touche into substantial question. In addition, two examinees—including the former Controller and Vice-President Finance of Oliver's, and Maspeth Industries, Inc.—have interposed the fifth amendment of the United States Constitution and New Jersey Constitution, and refused to answer any questions. Thus, the examination of Touche is now an urgent necessity.

(8) On June 30, 1987, this Court entered an order directing Touche Ross to produce

certain documentation at the offices of the attorneys for the Unsecured Creditors' Committee on or before June 30, 1987. Said order provided that if said documentation was not delivered on said date that Touche Ross would be assessed a $5,000 penalty for each date the material was not produced in conformance with this Court's order. The order further provided that Touche Ross was to appear for oral examination through the taking of the deposition of its representatives by the Committee.

## LEGAL CONCLUSIONS

In summary, the issue before the Court is whether the provisions of Bankruptcy Code Section 1103(b) preclude the attorneys for the Unsecured Creditors' Committee from being retained in an individual capacity by certain members of the Committee so as to start separate and distinct law suits on behalf of said individual Committee members, arising out of the alleged negligent audit produced by Touche Ross in connection with the debtor's records. At oral argument the attorneys for the Committee advised the Court that in said litigation they would be relying on the legal theory set forth in the New Jersey State Court case of *Rosenblum v. Adler,* 93 N.J. 324, 461 A.2d 138 (1983).

A look at the *Rosenblum, supra,* case discloses a fact pattern remarkably similar to the allegations raised by the Unsecured Creditors' Committee in the matter *sub judice.* In *Rosenblum,* plaintiffs who had acquired stock in a publicly traded corporation as consideration for the sale of their business entities to a company known as Giant Stores, filed suit in the state courts of New Jersey against Touche Ross asserting that Touche had performed a negligent audit of Giant's records for the years 1971 and 1972. Justice Schreiber, in writing the unanimous opinion for the New Jersey Supreme Court held that an independent auditor under New Jersey law would be held accountable to detect illegal or improper acts that could have and should have been uncovered in the exercise of normal, professional accounting skills. Thus, the *Rosenblum* Court recognized that a negligently incorrect financial statement that is placed into the stream of commerce and is tendered to a third party not in privity with the accounting firm, may be relied upon for its accuracy by the third party. If the third party is able to demonstrate he relied on the statements contained in the report and that the misstatements were due to the auditor's negligence and that the negligence was a proximate cause of the plaintiff's damages, the third party under New Jersey law will be allowed to sue the accounting firm for reliance on the said misstatements. It is a cause of action such as is set forth in *Rosenblum* that the individual financial institutions on the Creditors' Committee wish to pursue on their own behalf against Touche Ross. The question before this Court is, will the pursuing of said individual pieces of litigation by the professionals while they are serving as counsel to the Unsecured Creditors' Committee in the within Chapter 11 create an adverse interest in connection with this case so as to violate Bankruptcy Code Section 1103(b).

It is interesting to note that Justice Schreiber in *Rosenblum,* at page 345, 461 A.2d 138 of his decision, notes that one of the principal reasons for having an independent audit is for the purpose of informing management of a business entity of irregularities and inefficiencies in their own business. The court goes on to note that gradually a need for independent audits was generated by public ownership of business enterprises and by requirements of stock exchanges and securities law.

> The auditor's function has expanded from that of a watchdog for management to an independent evaluator of the adequacy and fairness of financial statements issued by management to stockholders, creditors, and others. Broad, "The Progress of Auditing," 100 J. *Accountancy* 38, 38–39 (1955); Hallett & Collins, "Auditors' Responsibility for Misrepresentation," 44 *Wash.L.Rev.* 139, 178 (1968).

*Rosenblum v. Adler, supra,* at page 346, 461 A.2d 138.

It is further noted that Justice Schreiber in the *Rosenblum* case, in reviewing the

scope and magnitude of damages that a plaintiff in an action grounded in negligence against a public accounting firm may recover, states the following at page 350:

> The injured party would be limited to recovery of actual losses due to reliance on the misstatement. Negligence of the injured party could bar or limit the amount of recovery under the Comparative Negligence Act. N.J.S.A. 2A:15–5.1. *The accounting firm could seek indemnification or contribution from the company and those blameworthy officers or employees.* (Emphasis added.) (Footnote omitted.)

In the language quoted above, the *Rosenblum* Court thus restricted the amount of money recoverable against the accounting firm to the actual loss suffered. The plaintiff in such an action is not entitled to seek damages for the benefit of the bargain (see *Rosenblum* footnote 13, page 350, 461 A.2d 138). Thus, the damage claims that would be asserted by individual members of the Creditors' Committee in the pending litigation they contemplate starting against Touche Ross will be parallel to the claims filed in the Oliver's bankruptcy.

It is also noted that the shareholders of Oliver's have currently commenced in the federal courts of the State of New York a separate and distinct law suit against certain principals of Oliver's as well as against Touche Ross. Said fact was stipulated at the oral argument of the within matter.

Bankruptcy Code § 323 states that a trustee in a Chapter 11 proceeding is the representative of the estate and that said trustee has the capacity to sue and be sued on behalf of the estate.

It is clear that the individual members of the Creditors' Committee, particularly the banks on said Committee, may, under the *Rosenblum* case have a valid cause of ac-

tion if they can establish same in accordance with the case law governing said claims.[2] It is also equally clear that the trustee, as the representative of the estate, has a similar right to sue on behalf of the estate for what he may feel to be breaches of the contract entered into between Oliver's and Touche Ross and that the said trustee possibly has a cause of action grounded in negligence against said accounting firm.

The Court notes Bankruptcy Code Section 1103. Specifically, 11 U.S.C. Section 1103(b) provides:

> (b) An attorney or accountant employed to represent a committee appointed under section 1102 of this title[3] may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest. (Footnote added.)

The last sentence in subsection (b), which allows a person representing a committee to represent others in connection with the case, was added by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. No. L. 98–353, 98 Stat. 358, 384. In other words, while an attorney retained by a creditors' committee may also represent others with parallel interest in the case, such representation is prohibited if there is an actual conflict of interest. *Matter of Levy*, 54 B.R. 805 (Bankr.S.D.N.Y.1985). Prior to the 1984 Amendments, Section 1103(b) read as follows:

> A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the case.

---

2. Nothing herein precludes the said Committee members from pursuing their rights. This opinion is restricted to the issue of the right of the three professionals herein to undertake the said new litigation.

3. § 1102 **Creditors' and equity security holders' committees:**

(a)(1) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

The effect of the 1984 Amendments was to weaken the absolute prohibition of simultaneous representation by counsel (1) for a creditors' committee and (2) for creditors in a matter adverse to the interest of other creditors in the case. However, the amendments did not alter the prohibition of counsel representing an individual creditor and a creditors' committee if the individual creditor hired such counsel to litigate issues potentially adverse to other committee members. *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 655 (Bankr.E.D.Pa.1987). The prohibition against simultaneous representation of adverse interests is based upon two considerations. First, courts have expressed concern that the vigor of the lawyer's representation of one client may be diminished in an effort to avoid antagonizing the other client. The second consideration relates to the client's expectation of receiving the undivided loyalty of the lawyer. *American Bar Association Annotated Model Rules of Professional Conduct*, ABA Model Rule 1.7 (Conflict of Interest) (Comment on Loyalty to a Client), page 73 (1984).[4] "Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests ... [t]he critical [question to consider is] the likelihood that a conflict will eventuate, and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose causes of action that reasonably should be pursued on behalf of the client." *Id.* While sometimes it is difficult to prove that an actual or potential conflict exists between the committee and the individual creditor, a conflict of interest can be established by a showing that a conflict is likely to arise. In such cases, the integrity of the committee process should be protected. 5 *Collier on Bankruptcy.* ¶ 1103.03 (15th Ed.1987).

A "conflict of interest," as usually applied, refers to the representation by an attorney of two or more parties holding or claiming adverse interests. *In re Roberts*, 46 B.R. 815 (Bankr.D.Utah 1985), *modified* 75 B.R. 402 (D.Utah, 1987). The Third Circuit Court of Appeals has held that in applying Canon 9 of the Canons of Ethics (found in the ABA Code of Professional Responsibility) a court "must view the conduct [of the attorney] as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted." *United States v. Miller*, 624 F.2d 1198, 1202 (3rd Cir.1980); *see also, In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 (E.D.Pa. 1982). The prohibition against the conflict of interest provisions are designed to avoid a serious potential for conflicts of interest. *In re Roberts, supra.* These provisions require that parties and their attorneys not only avoid actual conflicts of interests, but be above suspicion. *In re Roberts, citing In re American Tierra,* (unpublished opinion, No. 81M–03073, Bankr.D.Utah, 1983).

Case law prior to the 1984 Amendments had generally held that any potential for conflict of interest was to be avoided. See, *In re Broadcast Management Corp.*, 36 B.R. 519 (Bankr.S.D.Ohio 1983); *In re Saxon Industries, Inc.*, 29 B.R. 320 (Bankr.S.D.N.Y.1983); *In re Combustion Equipment Associates*, 8 B.R. 566 (Bankr.S.D.N.Y.1981); *Matter of Proof of Pudding, Inc.*, 3 B.R. 645 (Bankr.S.D.N.Y.1980). Each of the aforementioned cases contain dicta to the effect that Section 1103(b) provided an absolute bar to multiple representation.

In *In re Broadcast Management Corp., supra,* the court disallowed an attorney's compensation for 8.66 hours of work on behalf of a creditors' committee that was performed while the attorney also represented an individual creditor. Relying on the aforementioned case law, the court not-

---

**4.** The appropriate guidance for finding the current national standards for ethical norms lies in the standards promulgated by the American Bar Association. *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157 (3rd Cir.1984). *See also, In re South Pacific Island Airways*, 68 B.R.

574 (Bankr.D.Hawaii 1986) (holding that ABA Code of Professional Responsibility is the guideline for the federal courts to follow in regulating their affairs and is applicable in bankruptcy proceedings).

ed that the purpose of § 1103(b) was to prevent potential conflicts of interest and to avoid the appearance of impropriety, and that § 1103(b) "allows for no exceptions." *Id.*, at 520.

Similarly, in *In re Saxon Industries, supra*, the court approved an application by a committee of equity security holders to engage an accountant over the objection that the equity committee should rely on the work of accountants employed by the creditors' committee. In holding that an accountant retained by the creditors' committee could not also represent the interests of the equity committee, the court noted that the purpose of § 1103(b) was "to prevent even the possibility of conflicts of interests." *Id.*, at 321.

Bankruptcy Judge Buschman in his decision in *In re Lion Group*, 44 B.R. 684 (Bankr.S.D.N.Y.1984), considered the anticipated 1984 amendments to § 1103(b) and adopted a "substance over form" analysis in determining whether an actual or potential conflict exists.[5] Specifically, a court would review the facts of each case and subsequently determine whether a serious potential conflict of interest was presented. In so holding, the Court noted that the "approach of examining the substance of the dual representation, as opposed to merely its existence, has now been confirmed by Congress in disapproving the *per se* rule...." *Id.*, at 688. The court went further in stating:

> It thus appears from the legislative history, from prior authority in this court and from the amendment to § 1103(b), that Congress intended substance to prevail over form. Where the representation does not entail an actual *or potential* conflict of interests or present an appearance of impropriety, § 1103(b) is not to be interpreted to preclude a committee from engaging counsel of its choice, and one in whom it has confidence will best serve the interests of the creditors repre-

sented by the committee. (Emphasis added.)

*In re Lion Group*, 44 B.R. at 689.

In applying the amended § 1103(b), it is clear that the representation of a creditors' committee and representation of individual creditors within that committee does not per se constitute the representation of an adverse interest. The court, in cases of alleged conflict of interest, must apply the particular facts of the case to the intended meaning of Bankruptcy Code Section 1103(b). *See, Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

Cases decided after the 1984 Amendments have applied the case by case approach in light of the statutory change in language. The case of *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 655 (Bankr.E.D.Pa.1987) involved a law firm which was representing a group of creditors and sought to have certain contracts with the debtor paid in full by the debtor. The court held that the law firm could not be hired by the creditors' committee since, in the event that the legal claim was sustained, it would be adverse to the interest of all other creditors of the debtor. The court went further to hold that dual representation is prohibited "if the individual creditor in fact did hire such counsel to litigate issues *potentially adverse to the other committee members.*" *Id.*, at 662 (emphasis added).

*Matter of Levy*, 54 B.R. 805 (Bankr.S.D.N.Y.1985) involved an individual creditor (Bancorporation) formerly represented by an attorney who was counsel to the creditors' committee, who tried to disqualify the attorney on the grounds that there was a conflict of interest. Counsel for the creditors' committee allegedly intended to join the debtor's objection to an allowance of a claim by Bancorporation. The court denied the motion for disqualification and noted "while an attorney retained by a debtor, a trustee, or a creditors' committee may also represent others with parallel interests in

---

**5.** While the 1984 Amendments were to apply to post October 8, 1984 bankruptcy filings, the *Lion* Court chose to consider the amendments in deciding its case although the debtor had filed its petition on May 2, 1984.

the case, such representation is prohibited if there is an actual conflict of interest." *Id.,* at 807. The court then went on to describe why a conflict of interests did not arise:

> Counsel for the creditors' committee do not represent any individual creditors in this case; they were retained to represent the entire unsecured creditor class. *Therefore, counsel for the creditors' committee do not owe a duty to Bancorporation to maximize its interests at the expense of the remaining creditors in the represented class. To the extent that any funds are paid by these estates to an individual unsecured creditor pursuant to an otherwise objectionable claim, the remaining unsecured creditors will be deprived of funds to which they would otherwise be entitled.* (Emphasis added.)

*Matter of Levy,* 54 B.R. at 807.

*Levy* is distinguishable from the case *sub judice* in that counsel in *Levy* did not represent the individual creditor. This factual difference is of great importance as the *Levy* court hinged its decision based upon the fact that counsel for the creditors' committee would not have to represent the individual creditor's interest "at the expense" of the creditors' committee. Specifically, the court stated that there was "no actual conflict of interest in this case because counsel for the creditors' committee does not represent Bancorporation individually." *Id.,* 808.

While the 1984 Amendments have caused a shift away from the per se prohibition of dual representation, Section 1103(b) still operates as a watchdog to prevent impropriety. The Court in *In re Grant Broadcasting of Philadelphia, Inc., supra,* noted the decision of Chief Bankruptcy Judge Joseph

L. Cosetti in *In re Mesta Machine Co.,* 67 B.R. 151 (Bankr.W.D.Pa.1986), in which the chief judge commented at length on the duties of professionals employed by a creditors' committee. "Judge Cosetti held that such professionals are 'fiduciaries ... [who] must have undivided loyalty to those whom they represent without any conflict of interest.' The amended version of § 1103(b) is thus held by him [Judge Cosetti] to *continue to be 'designed to prevent potential conflicts of interest, and to avoid even the appearance of impropriety.'"* (Emphasis added.) *Grant Broadcasting,* 71 B.R. at 662, *quoting Mesta Machine Co.,* 67 B.R. at 156–157; *see also, Pension Benefit Guaranty Corp. v. Pincus, Verlin, Hahn, etc.,* 42 B.R. 960 (E.D. Pa.1984).[6]

Cognizant of the fact that parties should be free to choose attorneys and accountants of their choice, the Court is likewise well aware of the potential dangers that may subsequently arise in this case based upon the potential conflict of interests between the professionals, the Creditors Committee and the individual creditors the Professionals seek to represent. The dangers to which the Court refers was clearly defined by the factual possibilities leading to various types of liability described by Justice Schreiber of the New Jersey Supreme Court in the *Rosenblum* decision. There is very likely to develop a factual scenario in the future whereby Touche Ross, through a third party complaint, impleads the debtor, Oliver's, into the independent law suit. Once Oliver's becomes a party to the law suit, several scenarios could develop, placing the Professionals in the position of representing separate, adverse interests in an attempt to recover the same pool of damages. It is this precise scenario that concerns the Court.[7]

---

**6.** The Court in *Pension Benefit Guaranty Corp.* stated at page 963 that the responsibility of the creditors' committee to the class it represents is well settled:

> Although the creditors' committee represents the interests of all creditors, its main function is to advise the creditors of their rights and the proper course of action in the bankruptcy proceedings [collecting authorities]. Moreover, the committee owes a fiduciary duty to the creditors and must guide its actions so as

to safeguard as much as possible the rights of minority as well as majority creditors [collecting authorities].

**7.** The Court is also concerned that discovery conducted thus far by the professionals has been conducted at the expense the debtor's estate. The effect of allowing dual representation would also work an injustice to the administration of the estate by providing the information obtained through said discovery to non-debt-

The three professionals before the Court already have a client (the Unsecured Creditors). It is the duty of the professionals to work with the trustee to maximize the recovery for their current client, which includes the individual Committee members as well as the small unsecured creditors not on the Committee. Having full knowledge of the debtor's records through the Rule 2004 examinations undertaken in the Chapter 11, and in particular to the Committee accountant having had full access to all debtor's financial records, how can the professionals commence a suit for individual Committee members against the debtor's former accountant when, as the *Rosenblum* case states at page 350, 461 A.2d 138:

> The accounting firm [Touche] could seek indemnification or contribution from the company [Oliver's] and those blameworthy officers or employees.

Since the implementation of the Bankruptcy Code in 1979, much of the day to day administrative supervision of debtor's reorganization under Chapter 11 has passed to two entities, the United States Trustee and the Creditors' Committee. The Bankruptcy Code depends on certain inherent checks and balances which Congress has built into the law. It is the legal tension created by these checks and balances that to a large extent controls the debtor while under the protection of the bankruptcy statute. If that control is to have meaning and substance, we must have creditors' committees that are totally independent and that have at their disposal competent professionals to guide them in the carrying out of their administrative duties. This critical function and increased importance of creditors' committees was recognized by Professor Collier:

> Cases under the former Bankruptcy Act made it clear that members of a creditors' committee had a fiduciary responsibility towards the creditors that they represented. The Bankruptcy Code has not altered this fiduciary obligation although it has significantly increased the scope of the duties of creditors' committees. Since one of the primary purposes of the

or/third parties at the expense of the debtor's

Code was to make bankruptcy judges purely judicial officers and thus remove them from the administration of liquidation and reorganization cases, the administrative functions formerly exercised by the court must now be exercised by creditors' committees. While section 1103(c) states that a section 1102 committee "may" exercise certain functions, the exercise of such duties is not necessarily permissive. Creditors' committees appointed under sections 1102(a)(1) and 151102(a), in particular, have a duty to meet and to monitor the business affairs of the debtor. (Footnote omitted.)

5 *Collier on Bankruptcy*, ¶ 1103.07 (15th Ed.1987).

Thus, the integrity of the bankruptcy system demands that the professionals serving the committee not place themselves in a situation where their independence, loyalty and integrity can be questioned by the unsecured creditor body whom they represent.

Based upon the aforementioned factual findings and conclusions of law, the matter before the Court seeking authorization for the professionals to represent individual creditors is denied.