**In re RUSTY JONES, INC., Debtor.**

**Bankruptcy No. 88 B 18708.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 28, 1989.

See also, Bkrtcy., 109 B.R. 838.

James A. Chatz, Norman Newman, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for debtor.

Karen H. Moore, Office of the U.S. Trustee, Chicago, Ill., U.S. Trustee.

Robert Nord, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for Distributor Claimant Committee.

## MEMORANDUM OPINION ON APPLICATION OF COMMITTEE OF DISTRIBUTOR CREDITORS FOR APPROVAL OF EMPLOYMENT OF COUNSEL

JACK B. SCHMETTERER,
Bankruptcy Judge.

### Introduction

The United States Trustee for this District selected and appointed the Official Committee of Distributor Creditors in this bankruptcy proceeding. This Committee seeks to employ the law firm of Hinshaw, Culbertson, Hoban & Fuller, and attorneys within that firm, as its attorneys. It also seeks a retainer of $25,000 with leave to draw up to $10,000 from that retainer toward services performed and to be performed on behalf of this Committee, subject to its future applications for fees and disbursements.

The Debtor has objected to these particular counsel, assertedly because they are not "disinterested" within the meaning of 11 U.S.C. § 101(13)(E) because they have a disqualifying "adverse interest" within the meaning of 11 U.S.C. § 1103(b).

For reasons set forth below, the Debtor's objections are overruled and the Committee's Application will be entirely allowed.

The factual basis for Debtor's objection rests generally on the following uncontested facts:

1. The Hinshaw firm represented and continues to represent individual members of the Committee in their claims against the Debtor and in certain suits against Debtor. Those suits have since been amended to include only the individual claims of these parties against Beatrice Foods, and Debtor has been dismissed therefrom.

2. Those claims against Debtor will, of course, draw upon Debtor's assets to defend same and will therefore diminish the estate. If successful, such claims will draw against the assets in varying amounts between the different claimants.

3. Some of the claimants assertedly owe obligations to Debtor, and counterclaims will be pleaded.

4. The Hinshaw firm originally represented several Committee members in suit against Beatrice Foods Co. assertedly to recover Debtor's claims against Beatrice Foods. The Committee has since clearly conceded (Reply to Debtor's Objection, at p. 9) that under *Koch Refining v. Farmers Union Cent. Exch. Inc.*, 831 F.2d 1339 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988) those claims against Beatrice belong to the Debtor, not its creditors. Applicant's individual members have now brought suit against Beatrice only for their own asserted claims.

5. Debtor objects that the Estate should not compensate counsel who represent individual creditor claims for pursuing those claims. Applicant has contended in its Reply (at p. 9) that:

> While not every service rendered on behalf of distributors is compensable by the Estate, those services concerning claims that are common to the class of creditors that is effectively represented by the

Distributors Committee, or defenses that are common to distributors, do not place Hinshaw in conflict through its representation of the Distributors Committee.

While the opinion hereinbelow agrees that disqualifying adversity is not present here, this should not be read to agree with the implication that claim and defense work on issues common to a number of creditors represented by the Distributor Committee is to be compensated out of the Debtor's estate. While the Court is not now called on to pass on fees, when that time comes only work recognized as Official Committee work will be compensated by Debtor.

## DISCUSSION

Section 1103(b) of the Bankruptcy Code provides:

An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.

Prior to the 1984 amendments of the Code, § 1103(b) contained a per se prohibition against dual representation by an attorney of both individual creditors and a creditors committee. The amendment of 1103(b) permits a committee to employ an attorney or accountant, notwithstanding that attorney's representation of members of the committee in connection with the case, "so long as any other party represented by such attorney or accountant in connection with the case does not have an adverse interest to the interest represented by the committee." Vol. 5 *Collier on Bankruptcy,* ¶ 1103.03 at 1103–8 (15th Ed.).

Although Section 1103(b) of the Bankruptcy Code no longer contains a per se prohibition against dual representation by an attorney for both individual creditors

and a creditors committee, it does prohibit dual representation when there is an actual conflict of interest or where there is a likelihood of a conflict of interest. *In re Oliver's Stores, Inc.,* 79 B.R. 588, 594 (Bankr.D.N.J.1987). A conflict of interest is defined as the representation by an attorney of two or more parties holding or claiming adverse interests. *In re Roberts,* 46 B.R. 815, 827 (Bankr.D.Utah 1985), *modified,* 75 B.R. 402 (C.D.Utah 1987). *See In re U.N.R. Industries, Inc.,* 71 B.R. 467, 480 (Bankr.N.D.Ill.1987).

In applying Canon 9 of the Canons of Ethics, a court "must view the conduct [of an attorney] as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted." *U.S. v. Miller,* 624 F.2d 1198, 1202 (3d Cir.1980) (citation omitted).[1] These provisions require that parties and their attorneys not only avoid actual conflicts of interests, but be above suspicion. *In re Roberts,* 46 B.R. at 838.

The 1984 amendment to Section 1103(b) did not alter the prohibition of counsel from representing an individual creditor and a creditors committee, if the individual creditor hired such counsel to litigate issues potentially adverse to other committee members. *In re Grant Broadcasting of Philadelphia, Inc.,* 71 B.R. 655, 662 (Bankr.E.D.Pa.1987). The test is generally stated to be:

"Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests ... [t]he critical [question to consider is] the likelihood that a conflict will eventuate, and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose causes of action that reasonably should be pursued on behalf of the client." *While sometimes it is difficult to prove that an actual or potential conflict exists between the*

1. The ABA Code of Professional Responsibility is the guideline for the federal court to follow in regulating ethical standards and is applicable in

bankruptcy proceedings. *In re South Pacific Island Airways,* 68 B.R. 574, 576 (Bankr.D.Hawaii 1986).

*committee and the individual creditor, a conflict of interest can be established by a showing that a conflict is likely to arise. In such cases, the integrity of the committee process should be protected.* (Emphasis added.)

*Oliver's Stores,* 79 B.R. at 594 (*quoting American Bar Association Annotated Model Rules of Professional Conduct,* ABA Model Rule 1.7 (Conflict of Interest) (comment on Loyalty to a Client), p. 73 (1984); citing Vol. 5 *Collier on Bankruptcy,* ¶ 1103.03 (15th Ed.1987)).

The chief argument of Debtor is that the Committee counsel cannot act adversely to the Debtor. The chief flaw in that argument is that it assumes a fiduciary duty on the part of the Distributor Committee to facilitate the Debtor's reorganization.

On the contrary, the Distributor Committee's fiduciary duty is to the Distributor Creditors. Debtor has not succeeded in identifying any adversity in interest between the Distributor Creditors as a whole and the particular Distributor Creditors individually represented by the Hinshaw firm. The possible problems predicted by the Debtor involve (1) the competitive posture of the individual clients vis-a-vis the Debtor, and (2) the potential for Debtor's confidential information to be learned by Committee counsel. Those issues would be presented to the same extent whether or not Distributor Committee's counsel also represented individual distributors. Those issues would exist because of the community of interest shared by the Distributor Creditors, so that any attorney representing them as a class would be bound, as part of pursuing their best interests, to adopt positions adverse to the Debtor.

The cases cited by the Debtor deal with general unsecured creditor committees within which different groups had interests adverse to one another. The Debtor seems to assert, unsupported by either authority or the realities of this case, that the Distributor Committee is to be treated as if it were a general unsecured creditor committee. This Committee is rather a special interest subgroup of creditors, entitled under 1103(c) to pursue their own interests even if adverse to other groups of creditors or the Debtor.

It is also clear that Debtor has misinterpreted the intent of § 1103(b) in its assertion that the Hinshaw lawyers have a conflict because Rusty Jones may file an original action or counterclaim in the litigation against some or all of the individual distributors, and that Hinshaw's representation of the individual distributors is thereby "adverse to the interest of the Rusty Jones estate".

The criteria by which the existence of a conflict is established under § 1103(b) is not that non-committee creditors represented by counsel for the Committee have an interest adverse to the Debtor's estate. A conflict only arises in the event that counsel seeks to represent both individual creditors and a Committee which have adverse interests.

A case filed just prior to the enactment of the Amendments to the Bankruptcy Code considered the anticipated Amendment to § 1103(b). *In re Lion Group,* 44 B.R. 684 (Bankr.S.D.N.Y.1984). The court was to determine whether counsel who had represented members of an unofficial committee (composed of certain municipal and school districts) could be appointed to represent the Official Committee (composed of a larger number of municipal and school district creditors).

The *Lion* court focused on the relationship between the clients represented by the proposed counsel and the Official Creditors Committee, noting that, "There was no assertion that the Unofficial Committee and the Special Committee (of original clients) have 'varient priorities and interests with respect to their interests to the debtor.' *[In re] Saxon [Industries, Inc.],* 29 B.R. [320] at 321 [ (Bankr.S.D.N.Y.1983) ]." *Lion* at 688. The interests of each group was found to be the same in that each sought to maximize recovery to the municipalities and school district claimants. The decision in *Lion* concluded that:

Where the representation does not entail an actual or potential conflict of interest or present an appearance of impropriety, § 1103(b) is not to be interpreted to pre-

clude a committee from engaging counsel of its choice and one in whom it has confidence will best the interests of the creditors represented by the Committee. 44 B.R. at 689.

In this case, Hinshaw originally represented plaintiffs in several lawsuits. Two of those original plaintiffs were appointed as members of the Distributors Committee. Hinshaw now represents a larger number of distributors in their claims against Debtor. Debtor has not demonstrated that the claimant distributor creditors or the Hinshaw firm have any interest or potential interest adverse to the Distributor's Committee. If Rusty Jones does counterclaim against some or all of the distributor creditors represented by Hinshaw, that does not raise a conflict between those distributor creditors and the Committee as a whole.

Individual members of this Creditors Committee assert claims in differing amounts and subject to differing potential setoffs. However, that does not create an adverse interest which would prohibit one counsel from representing individual members of the committee and also the committee as a whole when all members of the committee share claims of a similar nature. In short, no adverse interests have been demonstrated here between individual members of the Committee represented by Hinshaw and the Committee as a whole.

Hinshaw does not seek to represent a general unsecured Creditor's Committee, as was the case in *Grant Broadcasting*, 71 B.R. 655. In that case a law firm attempted to represent both the general unsecured creditors and individual "programmer" creditors who were seeking to compel the debtor to make administrative payments. Those payments would clearly have had an adverse effect on the other creditors of the debtor who were also represented by the same Committee since the estate had insufficient funds to pay the "programmer" creditor and still have a chance to reorganize. *Id.* at 663.

Interests of the special Distributor Committee need not be identical to those of all creditors of the estate because this Committee was not appointed to represent all general unsecured creditors. In fact, the bulk of the estate's creditors are warranty claimants whose interests are being separately represented by a different special committee appointed by the U.S. Trustee.

## CONCLUSION

Considering the magnitude and complexity of this case, Applicant Counsel has significant work to do pertaining to the Plan and related aspects requiring their attention. They have already participated in opposition to the improvident efforts of Debtor to assume a management contract, and then to employ three investor principals. That and other prospective work justify the requested $25,000 retainer and further justify a draw down of $10,000 out of the retainer against future fee applications.

The Application was filed February 14, 1989, and seeks approval of employment as of December 5, 1988, prior to the U.S. Trustee's appointment of the Committee on January 25, 1989. Counsel cannot be appointed prior to the existence of their client, but will be approved *nunc pro tunc* January 25, 1989. Prior to that date, they worked only for their individual clients.

Applicant will present an Order in accord with the foregoing ruling.