**In the Matter of XGW EXCAVATING CO., INC. and XGW, Inc., New Jersey Corporations.**

**Bankruptcy No. 89–01893.**

United States Bankruptcy Court,
D. New Jersey.

March 15, 1990.

Harrison R. Byck, Scheider & Wiener, Newark, N.J., for Creditors' Committee.

Daniel M. Stolz, Lehman, Wasserman & Jurista, Millburn, N.J., for debtors.

WILLIAM H. GINDIN, Bankruptcy Judge.

This matter comes before the court on an application for compensation by Scheider & Wiener, as attorneys for the Unsecured Creditors' Committee, from which position they were removed by order of this court dated September 6, 1989.

### FACTS

On March 15, 1989 and March 28, 1989 debtors filed petitions pursuant to Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101 et seq.). The cases were the subject of an order for joint administration entered May 12, 1989. At the time of the filing, the debtor was indebted to P.C. Leasing, Inc. (now known, and hereinafter referred to, as "Phoenixcor"). On May 18, 1989, the date of the first meeting of creditors, an unsecured creditors' committee was formed. On June 5, 1989, the chairman of the committee executed an application requesting retention of Scheider & Wiener as counsel. Prior to executing the application, Scheider & Wiener informed the committee that it had represented Phoenixcor in its dealings with the debtor and that Phoenixcor had a security interest in property held by the debtor which had been returned to Phoenixcor. The firm further stated that it had no conflict of interest, as the creditor's only outstanding claim against XGW was an unsecured claim for a deficiency.

On June 13, 1989, David K. DeLonge, an attorney with Scheider & Wiener, asserted the facts relating to the firm's representation of Phoenixcor to the court in an affidavit and asserted, in further support of the retention, that the provisions of 11 U.S.C. § 1103(b) permit representation provided no actual conflict of interest continued to exist. He stated that there was no actual conflict of interest and that the firm would continue to represent Phoenixcor on "any

deficiency claim against XGW, Inc. and its three principals." The firm did not make it clear that Phoenixcor still had to assert its secured claim against the debtor and its principals, and that it intended to use the discovery provided for by Rule 2004 for other purposes. It did not say that the 2004 Examination was limited to the ascertainment of "the liabilities and financial condition of the *debtor,* or to any matter which may affect the administration of the *debtor's estate....*" (emphasis added) [Rule 2004(b)]. Based upon the representations of Mr. DeLonge, the court, on June 22, 1989, entered an order authorizing the retention of the firm as attorneys for the creditors' committee.

The debtor, through its attorney, called attention to an alleged conflict of interest by way of a telephone conversation with Scheider & Wiener on July 25, 1989. On August 11, 1989, the debtor filed a notice of motion and supporting documents seeking to disqualify Scheider & Wiener from serving as attorneys to the committee. It alleged that subsequent to the entry of the order, the firm continued to represent its client Phoenixcor *as a secured creditor* for the purpose of establishing the amount of its deficiency and, as a result, the amount of its unsecured claim. Furthermore, the application alleged that the firm was using its position as counsel to the creditors' committee to obtain information to be utilized by Phoenixcor in pursuing its secured claim and in pursuing its action against the principals of the debtor corporation as guarantors of the obligation to Phoenixcor. Scheider & Wiener did not deny these essential factual elements, but attacked the debtor's standing to raise the objection and the motives of the debtor's principal in doing so. Since the factual allegations were not denied, they must be taken by this court as true. After a hearing and full consideration of the extensive briefs, the court, on September 6, 1989, entered an order disqualifying Scheider & Wiener from representing the creditors' committee.

The law firm filed an application for counsel fees for services rendered and costs expended during its representation. The court has examined the application and finds that for time expended for the various tasks and the hourly rate of the attorneys working on the matter, the amount requested is reasonable. An apparent stubborn refusal to read the printed portion of the summary sheet filed requires the court to find that expenses must be reduced to a reasonable amount of $193.10, as the applicant charged for photocopies in excess of the allowable amount. The court also finds that of the $9,478.75, $1,580.25 was expended in defense of the debtor's motion. Such a claim cannot be allowed. It must be noted as well that $5,264.00 (including the $1,580.25) was expended after the firm had notice that the debtor was concerned about a conflict of interest.

## QUESTIONS PRESENTED

The questions for determination are narrow. First, the court must decide whether Scheider & Wiener may receive any compensation as a result of the court's finding that a conflict of interest existed. If the threshold question is answered in the affirmative, the court must then concern itself with whether the fee should be reduced to exclude compensation for work done after the existence of such a conflict became known.

## DISCUSSION

■ The Bankruptcy Code establishes a bipartite test for the payment of counsel fees. First, the applicant must not hold an adverse interest to the estate as defined by 11 U.S.C. § 327(a). Furthermore, it must be disinterested under 11 U.S.C. § 101(13). 11 U.S.C. § 328 permits a committee to employ a professional person. In the instant case such employment was authorized. § 328(c), however, allows the court to deny compensation if "such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." Scheider & Wiener represents such an interest. Since, however, the section uses the word *may,* the determination of the court is discretionary and

guidance must be sought from the authorities.

As is often the case, an appropriate starting point in the analysis is to look to a United States Supreme Court decision. The late Justice Douglas, in *Woods v. City Nat'l Bank and Trust Co. of Chicago*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941), *reh'g denied* 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941) said:

> Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were not shown....

312 U.S. at 268, 61 S.Ct. at 497. While that case is distinguishable, as the interests there were publicly held securities, the principle remains the same. A professional cannot serve two masters. Congress, by amendment to the Code in 1984, carved out an exception to this prohibition where the attorney specifically represents a creditor with interests identical to those of the committee. In the instant case, the documents presented to the committee and the court set up a unity of interest. The presented documents suggested that there was nothing left to be done by Phoenixor as a secured creditor. Certainly, had a statement been made indicating that the collateral had not been disposed of, or had the particular law firm been planning to set up a sale of the collateral, or had the firm requested further information to establish a claim against individuals, the court would have been alerted to the existence of a problem. At minimum, admission by the firm that the claim might spawn further litigation against non-debtor parties based, at least in part, upon discovery from the debtor, was required. Whether Scheider & Wiener was representing Phoenixcor as a secured or unsecured creditor is crucial to determine whether § 1103(b) may have been violated.

The matter of complete disclosure has been held to be a key factor in determining the right of the attorney for the creditors' committee to receive compensation from the bankruptcy estate as an administrative expense pursuant to 11 U.S.C. § 330. *In re South Pac. Island Airways*, 68 B.R. 574 (Bankr.D.Haw.1986). In that case, the court found that there had been an incomplete disclosure of prior representation of the debtor. Some of the action taken on behalf of the debtor was set forth in the initial application, but other matters were neither discussed nor disclosed. Potential conflicts were not set forth. In considering the appropriate sanctions to be levied upon counsel, Judge Chinen said:

> Applicant did not advise this court on all potential conflicts, even though he knew or should have known of them. The court finds that Applicant is well versed in the field of bankruptcy. However, no matter how brilliant an individual may be, he cannot properly serve two masters. As such, the court concludes that a denial of all fees is warranted under the circumstances.

68 B.R. at 578. See also *Matter of Roger J. Au & Son*, 71 B.R. 238 (Bankr.N.D.Ohio 1986).

Here, as there, the applicant is experienced in the field of bankruptcy. Members of his firm have practiced in the field for many years and the particular applicant must be held to the standards of an expert. Even if the applicant were untutored in the field, any attorney must be held to the highest standard of ethical responsibility. An attorney cannot tell his client that he is an expert and then argue to the court that he did not know the applicable law.

On the other end of the spectrum is the situation in which the attorney applies to the court in good faith, believes there is no conflict of interest, and fully discloses of all of the known facts. If a conflict is discovered, and the attorney immediately resigns, it has been held that denial of all fees is too harsh. *In re Pacific Express Holding*, 56 B.R. 859 (Bankr.E.D.Cal.1985). In that case, the attorney for the debtor learned that the creditors' committee intended to file an adversary proceeding against a separate corporation used as a vehicle for members of the attorney's law firm to invest in the debtor corporation.

Counsel withdrew as soon as he learned of the intended action. After appropriate "trimming" the fee was allowed.

In our own jurisdiction, Judge Tuohey dealt with the problem in *Matter of Oliver's Stores*, 79 B.R. 588 (Bankr.D.N.J. 1987). In *Oliver's Stores* the professionals retained by the creditors' committee sought to file law suits against the debtor's former accountants on behalf of individual clients who were, in fact, creditors of the debtor corporation. They made full disclosure to the court in advance of any action. While conceding that the 1984 amendments to 11 U.S.C. § 1103(b) eliminated a *per se* rule proscribing the representation of both a creditor and a committee, the court pointed out that the cases required a cautious approach, and a clear disqualification where there existed a potential conflict. While *Oliver's Stores* did not involve compensation, the court served notice on the bar of this jurisdiction that the standard governing conflicts of interest for counsel for creditors' committees is and will be a rigid one.

> Thus, the integrity of the bankruptcy system demands that the professionals serving the committee not place themselves in a situation where their independence, loyalty and integrity can be questioned by the unsecured creditor body whom they represent.

79 B.R. at 597.

All of the authorities cited herein were available to the attorneys for the committee when the activities complained of by the debtor were called to their attention. Not only did counsel resist the debtor's application, but it continued to render services prior to the adjudication by the court of its right to remain in the case. This court cannot, however, find that the initial action of the attorneys was clearly improper, for there was at least a reasonable position that adequate disclosure had been made. As Judge Fox found in *In re Paolino*, 80 B.R. 341, 346 (Bankr.E.D.Pa.1987) there must be a balance struck between services rendered after the conflict became known and those rendered while the professional proceeded in good faith. See also,

*In re BH & P*, 103 B.R. 556 (Bankr.D.N.J. 1989). Any other approach would be draconian and would have a chilling effect upon clients' rights to be represented by counsel of their choice.

■ As soon as a problem concerning a conflict of interest is brought to the attention of a professional, that professional has an obligation to take all reasonable steps to resolve the dispute. Further work should cease or continue only with the permission of the court. Certainly, the committee or the debtor should not be asked to pay for the costs incurred trying to resolve the issue. In the instant case, the problem was brought to the firm's attention at the moment the telephone call from the debtor's attorney was received. The contents of that call, even as reflected on the applicant's contemporaneous time sheets, should have alerted the attorneys for the committee to their responsibility and the matter should have been brought to the attention of the court at once.

This court therefore concludes that all applications for compensation earned after July 26, 1989 must be denied. The law firm of Scheider & Wiener is therefore allowed the sum of $4,214.75, representing the amount requested reduced by the amount expended after counsel had notice that a potential problem involving a conflict of interest existed. In addition, reasonable expenses of $193.10 will be allowed.

Counsel for the debtor is directed to submit an order in accordance with this opinion within ten days.