**In re: SAXON INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 82 B 10697 (EJR).**

United States Bankruptcy Court, S.D. New York.

April 28, 1983.

Burns Summit Rovins & Feldesman, Cahill, Gordon & Reindel, Sp. Counsel, New York City, for debtor.

Milbank, Tweed, Hadley & McCloy, New York City, for Equity Sec. Holders' Committee.

Jerome Feller, Asst. Regional Administrator, New York City, for Securities & Exchange Com'n.

Shea & Gould, New York City, for Creditors' Committee.

Zalkin, Rodin & Goodman, New York City, for Unofficial Committee of Bank Creditors.

White & Case, New York City, for Bankers Trust Co. as Indenture Trustee.

Wolf, Popper, Ross, Wolf & Jones, New York City, for class action plaintiffs.

## DECISION AND ORDER ON APPLICATION BY EQUITY SECURITY COMMITTEE TO RETAIN ARTHUR ANDERSEN & CO. AS ACCOUNTANTS

EDWARD J. RYAN, Bankruptcy Judge.

The Committee of Equity Security Holders of Saxon Industries, Inc. (the "Equity Committee") seeks an order authorizing the employment of Arthur Andersen & Co., as accountants, pursuant to 11 U.S.C. § 1103. For the reasons set forth below, the application is granted.

On June 30, 1982, the court ordered the United States Trustee to appoint a committee of equity security holders of common stock of the debtor. On August 3, 1982 acting pursuant to this court's order and section 151102(b) of the Bankruptcy Code, the United States Trustee appointed the Equity Committee.

During a meeting of the Committee held on August 23, 1982, where a majority of the members of the Committee was present, the Equity Committee selected the firm of Arthur Andersen & Co. to represent it, subject to court approval. The Equity Committee

believes that the services of accountants are required on its behalf in order that it be adequately advised and thereby fully enabled to discharge its fiduciary duties under the Bankruptcy Code. Arthur Andersen & Co. has no connection with the debtor and will represent no entities other than the Equity Committee in connection with this case, and neither represents nor holds any interest adverse to the estate with respect to the matters on which it is to be retained.

At the August 23, 1982 meeting, the Equity Committee considered the need to retain accountants to review the debtor's books and records, monthly operating statements and all financial information prepared by the debtor or its accountants, including a review of the debtor's financial statements as of the date of the filing of the petition; to attend meetings of the Equity Committee and of the debtor in possession; to review current operations of the debtor, and to render assistance in an investigation of the acts, conduct, assets and liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business. After being advised that the Creditors' Committee was willing to make available all reports and information generated by its accountants, Ernst & Whinney, the Equity Committee determined that it would be unnecessary, wasteful, and duplicative to retain its own professionals to perform general accounting services being undertaken by others. Consequently, the Equity Committee proposed to retain Arthur Andersen to perform only specific services that may be requested from time to time which are of special interest and concern to the Equity Committee. It is anticipated that Arthur Andersen will (1) assist the Equity Committee in its analysis and review of financial information submitted to it by various other accountants employed in this case; (2) provide consultation on the effect of alternate accounting and tax practices and theories; and (3) perform other such services as may be required in the interests of the equity security holders of the debtor. Because of the limited nature of the engagement, the Equity Committee requested and received from Arthur Andersen a representation that fees and expenses would not exceed $3,000 per month, or $25,000 in total.

The question before this court is whether the availability of information from various accounting firms presently employed by other entities in the case obviates the need for the Equity Committee to employ its own professional financial advisers.

Statutory law and equity require the granting of Equity Committee's application to retain Arthur Andersen as accountants.

The Bankruptcy Code, 11 U.S.C. § 1103, mandates against the utilization by more than one entity in a case of the same professional persons. Section 1103(b), in pertinent part, provides:

"A person employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity in connection with the same case."

The legislative history of Section 1103(b) states the purpose of this section, to wit: to prevent even the possibility of conflicts of interest. H.R.Rep. No. 595, 95th Cong., 1st Sess. 104–5, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6066 (1977). The comment to section 1103(b) makes it absolutely clear that *any* professional employed to represent the committee must cease to represent *any other* entity in the case, thus avoiding *any possible* conflict of interest" (emphasis added). In the instant case, the two committees are separate and distinct entities with the members of the unsecured creditors and equity creditors class possessing variant priorities and interests with respect to their relationship with the debtor. Thus, an accountant retained by the Creditors' Committee cannot also represent the interests of the Equity Committee. This court in *In re Proof of the Pudding, Inc.*, 3 B.R. 645 (Bkrtcy.S.D.N.Y.1980) determined that the same attorneys could not represent the three separate creditors' committees of closely related Chapter 11 cases. As it was stated in that case, it is not only the actual conflict of interests that must be avoided,

but even the simple appearance of conflict. To avoid the manifestation of this conflict would serve both the interests of the parties as well as the integrity of this court.

The potential conflict of interest for accountants is demonstrated by the stringent rules regarding compensation. A fiduciary who represents security holders in a reorganization may not perfect his claim to compensation by insisting that, although he had conflicting interests, he served his masters equally well or that his primary loyalty was not weakened by the pull of the secondary one. Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries at a level higher than that trodden by the crowd. *In re Mt. Forest Fur Farms,* 157 F.2d 640, 649 (6th Cir. 1946). *See Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546.

■ However, the Equity Committee's right to the services of an independent professional account is not unlimited. A party's request for independent professional services should be denied if such services are clearly duplicative and wasteful, and if it is apparent that the availability of another professional's work is unambiguous and can have only one clear, undisputed interpretation. Also, Ernst & Whinney, the accountant retained by the Creditors' Committee, can confer with Arthur Andersen, the proposed accountants for the Equity Committee, to avoid duplicative work and wasteful additional costs.

■ The three anticipated functions that Arthur Andersen will serve and the limit on payment for these limited services are consistent with the above principles. Accounting principles, computations and facts are subject to various interpretations. Recommendations can be based on and influenced by the client's position and objectives. The unsecured creditors and equity creditors represent and possess distinct status under the Code; therefore, their positions and objectives also differ with respect to their relationship to the debtor. If one accountant is required to represent both interests it may be faced with a conflict as to what action to undertake. Such a conflict could result in the recommendation of a middle ground compromise, causing the accountant to breach its fiduciary obligation to both parties. The addition of Arthur Andersen to serve in an advisory capacity to the Equity Committee will allow each party to receive the independent and disinterested advice that is required so that each Committee can, in turn, fulfill its fiduciary responsibilities.

In response to the opposition voiced with respect to the additional costs on the debtor, this court does not believe that the requirements of section 1103(b) can be waived, even in the interests of reducing costs and at least initially increasing the effectiveness of representation. *In re Combustion Equipment Associates, Inc.,* 8 B.R. 566, 568 (Bkrtcy.S.D.N.Y.1981).

The Unsecured Creditors' Committee's reliance on *In re Morton Shoe Companies, Inc.,* 22 B.R. 449, 9 B.C.D. 654 (Bkrtcy.D. Mass.1982) is misplaced. The court, in that case, held that professional services rendered for bankruptcy estates were not compensable from the estate where no approval had been obtained for the employment of such professionals. The case herein is inapposite.

Independent and disinterested advice is required for the Equity Committee to meet its fiduciary responsibilities and for the Committees' professionals to meet their fiduciary responsibilities. Accordingly, the Equity Committee is authorized to employ Arthur Andersen & Co. *nunc pro tunc* as of August 23, 1982 on the terms set forth in the application.

It is so ordered.