## In re EVANS PRODUCTS COMPANY et al., Debtors.

### No. 85–2610–CIV–HOEVELER.
### Bankruptcy Nos. 85–00512–BKC–TCB through 85–00519–BKC–TCB.

United States District Court,
S.D. Florida.

Sept. 25, 1985.

Milbank, Tweed, Hadley & McCloy, New York City (Steven J. Blauner, on brief and on argument), English, McCaughan & O'Bryan, Ft. Lauderdale, Fla., Patrick A. Barry, for appellants.

## ORDER

HOEVELER, District Judge.

This matter came on upon an appeal from two orders entered by the United States Bankruptcy Court for the Southern District of Florida (Britton, J.). Having considered the memorandum of appellant and the record, and having heard the arguments of counsel, the Court finds that the decision of the Bankruptcy Court should be reversed. The question presented on this appeal is whether the Bankruptcy Court was correct in denying an official committee of equity security holders appointed pursuant to 11 U.S.C. § 1102(a)(2) the authority to employ its own independent accountants.

On March 11, 1985, Evans Products Company ("Evans") and seven affiliated companies (collectively, the "Debtors") filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. The Debtors are currently operating their businesses and managing their properties as debtors in possession. Their Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.

The Committee of Non-Insider Equity Security Holders of Evans Products Company (the "Equity Committee"), appellant herein, was appointed by the Bankruptcy Court pursuant to 11 U.S.C. § 1102 on May 25, 1985. In its order appointing the Equity Committee, the Bankruptcy Court found that the appointment of such a committee was "necessary to assure adequate representation" of the interests of the approximately 17,000 non-insider holders of outstanding common and preferred stock of Evans.

By Application dated May 15, 1985, the Equity Committee sought the Bankruptcy Court's approval to retain the accounting firm of Seidman & Seidman to represent it in the bankruptcy proceedings. The Application recites that Seidman & Seidman would perform only specific services of unique concern to the stockholders of Evans and would focus on activities designed to protect the interests of stockholders in the reorganization process. The Equity Committee represented that it required independent, disinterested advice and assistance to analyze and interpret the financial

data compiled by others, to assist in the Equity Committee's negotiation of a plan of reorganization and to investigate allegations of misconduct, mismanagement and irregularity in the management of the affairs of the Debtors. In its Application, the Equity Committee represented to the Bankruptcy Court that it would make every effort to obtain from the accountants retained by the Debtors and by the other committees appointed in these cases all relevant financial information so as to avoid duplicative work by its Seidman & Seidman.

No party opposed the Application. Indeed, the Debtors' Response to the Application did not oppose the Equity Committee's Application, but urged each of the committees in these cases to attempt to avoid duplication of effort by their respective accounting firms in order to control administrative expenses. No other party filed any statement or objection concerning the Application. Indeed, this appeal by the Equity Committee was not opposed by any party.

By Order dated June 5, 1985, Bankruptcy Judge Britton denied the Equity Committee's Application. The Bankruptcy Court noted that accounting firms had already been authorized for the Debtors and for the other official committees appointed in these cases, and that there was no showing that another accounting firm was justified or necessary.

On June 4, 1985 the Equity Committee filed a Motion for Reconsideration of the Application. The Motion for Reconsideration emphasized that Seidman & Seidman would not be retained to do any work duplicative of work already being performed by other accountants retained in these proceedings, and that the Equity Committee required independent and disinterested advice and assistance in order to discharge properly its fiduciary duties under the Bankruptcy Code.

By order entered June 20, 1985, Judge Britton denied the Equity Committee's Motion for Reconsideration of its Application to Retain Accountants. The order recites that the reasons for the denial are those stated by the Bankruptcy Court at the hearing on the Motion for Reconsideration. A review of the transcript of that hearing reveals that the Bankruptcy Court denied the Application on two grounds because it believed that the retention of accountants by other committees in the case made it unnecessary for the Equity Committee to have the assistance of accountants as well, and because the Equity Committee, which is not a committee whose appointment is mandatory under the Bankruptcy Code, represents the interests of claimants who rank last in the priority of distribution established by the Bankruptcy Code.

The Equity Committee then brought this appeal from the Bankruptcy Court's June 5th and June 20th orders.

Section 1103(a) of the Bankruptcy Code, 11 U.S.C. § 1103(a), provides that a Committee appointed pursuant to Section 1102 of the Bankruptcy Code may, "with the Court's approval," select and authorize the employment by such committee of one or more attorneys, accountants or other agents to represent or perform services for such committee. 11 U.S.C. § 1103(a). It is also specifically provided in Section 1103(b) that "[a]n attorney or accountant employed to represent a Committee appointed under section 1102 of this title *may not*, while employed by such Committee, represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b) (Emphasis added). The statute thus clearly forbids adverse concurrent representations by professionals employed in bankruptcy proceedings. Congress enacted Section 1103(b) to "avoid the potential of serious conflicts of interest" that exists where professionals are permitted to represent more than one entity in a bankruptcy proceeding. H.Rep. No. 595, 95th Cong., 1st Sess. 402 (1977), *reprinted* in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6358. Moreover, the conflict of interest "requirements of Section 1103(b) [cannot] be waived, even in the interests of reducing costs and at least initially increasing the effectiveness of representation." *In re Saxon Industries, Inc.*, 29 B.R. 320, 322 (Bankr.S.D.N.Y.1983).

Moreover, it is clear that the two creditors' committees, which have been authorized by the Bankruptcy Court to employ accountants, have interests adverse to those of the Equity Committee. When a creditors' or equity committee is appointed pursuant to section 1102, it is "intended to be ... a partisan which will aid, assist and monitor the debtor pursuant to its own self-interest." *In re Daig Corp.*, 17 B.R. 41, 43 (Bankr.Minn.1981).

The interests of creditors and shareholders are likely to conflict over the course of a Chapter 11 proceeding. The Bankruptcy Court for the Southern District of New York recognized this conflict in *In re Saxon Industries, Inc.*, 29 B.R. 320 (Bankr.S.D.N.Y.1983) and granted the application of an equity committee to employ its own accountants. The question posed to the Court in *Saxon* is remarkably similar to that presented here: "whether the availability of information from various accounting firms presently employed by other entities in the case obviates the need for the Equity Committee to employ its own professional financial advisors." *Id.* at 321. The *Saxon* Court noted that:

"In the instant case, the two committees are separate and distinct entities with the members of the unsecured creditors and equity creditors class possessing variant priorities and interests with respect to their relationship with the debtor. Thus, an accountant retained by the Creditors' Committee cannot also represent the interests of the Equity Committee." *Id.*

■ It is clear that the Equity Committee has shown good cause for the retention of accountants that are independent and otherwise disinterested. The Equity Committee's request to retain its own accountants might have been properly denied if it was clear that the services to be performed would be duplicative and wasteful, or if the work product to be made available by other professionals is clearly unambiguous and not subject to disputed interpretations. *See In re Saxon Industries, Inc.*, 29 B.R. at 322. In the present case, it is not apparent that the work product of the other accountants already employed by the Debtors and the creditors' committees with adverse interests would be unambiguous and subject to only one clear, undisputed interpretation. Equally important is the fact that the accounting services which Seidman & Seidman will provide to the Equity Committee will not be duplicative or wasteful.

■ The Bankruptcy Court also based its conclusion that the Equity Committee did not need the assistance of independent accountants on the grounds that the appointment of an equity committee is not required by the Bankruptcy Code, and that the interests of equity holders rank below those of creditors under the priority of distribution under the Bankruptcy Code. Section 1102(a)(1) of the Bankruptcy Code mandates the appointment of a committee of creditors holding unsecured claims. Pursuant to Section 1102(a)(2), the Bankruptcy Court may order the appointment of additional committees of creditors or of equity security holders "if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(2). Nowhere in the Bankruptcy Code is it suggested that a committee whose appointment is mandatory pursuant to Section 1102(a)(1) has any greater or different rights or duties than a committee whose appointment is precatory pursuant to Section 1102(a)(2). Once appointed, their rights and responsibilities clearly are the same. The rights and fiduciary duties of the Equity Committee are no different from those of any committee appointed pursuant to Section 1102 in these cases. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir.1983). The most basic concepts of due process require the courts to afford protection to the recognized and substantial rights represented by the Equity Committee in an impartial way.

■ In appointing the Equity Committee in this case, the Bankruptcy Court found that the Committee was "necessary to assure adequate representation" of the approximately 17,000 non-insider equity security holders of Evans. Nowhere in the Bankruptcy Code did Congress limit the

right of shareholders to participate in bankruptcy proceedings because they stand behind creditors in the distribution of the assets of an estate. I must disagree, therefore, with the Bankruptcy Court's basing its denial of the Application, even in part, on the fact that equity security holders may be "last in line." Stockholders are no less entitled than creditors to independent, zealous representation by professionals free of any compromising influences or loyalties.

The Court also notes that the proposed accountants will assist the Equity Committee in investigating allegations of misconduct, mismanagement and irregularity in the management of the affairs of the Debtors. Such an investigation is of unique concern to stockholders and is not likely to be performed by any other constituency. Moreover, it is a function specifically contemplated by Section 1103(c)(2) of the Bankruptcy Code.

With all deference to the very capable Bankruptcy Judge, I must conclude that he erred in denying the Equity Committee's Application on the grounds set forth. Accordingly, the Order of the Bankruptcy Court denying the Equity Committee's Application to Retain Accountants is reversed and the Bankruptcy Court is directed to enter an Order approving the Application.