**In the Matter of the CELOTEX CORPORATION, et al., Debtors.**

**Nos. 90–10016–8B1, 90–10017–8B1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 30, 1991.

Jeffrey W. Warren, Tampa, Fla., for debtor.

Marsha G. Rydberg, Rydberg, Goldstein & Bolves, P.A., Tampa, Fla., for Official Asbestos Personal Injury Creditors Committee.

Charles M. Tatelbaum, Tampa, Fla., for Unsecured Creditors Committee.

Elihu Inselbuch, New York City, for Health Claimants Committee.

## ORDER ON OBJECTION TO THE APPLICATION OF OFFICIAL ASBESTOS PERSONAL INJURY CREDITORS COMMITTEE TO EMPLOY CAPLIN & DRYSDALE AND RYDBERG, GOLDSTEIN & BOLVES

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on to be heard upon the U.S. Trustee's Objection to the Application of Official Asbestos Personal Injury Creditors Committee to Employ Caplin & Drysdale (C & D) and Rydberg, Goldstein & Bolves (RGB) as legal counsel (C & D/RGB). The Court, after considering the Application, the affidavits of counsel, the briefs of the parties, the record in this case and arguments, and being fully advised in the premises, makes the following findings:

The leveraged buy out (LBO) mechanism used in relation to the Jim Walter Corp., in its most basic terms, brought about two corporate groups. One is the Hillsborough

Holdings Corporation (Hillsborough) composed of those corporations and other entities that were combined together in the actual LBO. The remainder corporate group is the Debtors, Celotex/Carey Canada (Celotex). Subsequent to the LBO but prior to Hillsborough filing its Chapter 11 Bankruptcy petitions in 1989, Case Nos. 89–9715–8P1 through 89–9746–8P1 (now before Chief Judge Paskay of this Court), various law firms representing asbestos victims on a contingent fee basis believed the LBO creating Hillsborough sequestered out certain potential assets which should have been available to satisfy the Celotex asbestos victims' claims. These law firms, organized as Asbestos Litigation Group (ALG)[1], decided appropriate litigation should be commenced to pierce the corporate veil of Hillsborough which, if successful, could ultimately bring Hillsborough assets to pay the Celotex asbestos claims. ALG sought legal representation to bring a lawsuit in Texas to pierce the corporate veil of Hillsborough. Such representation in the state court case was to be funded by the members of ALG through a form of assessment or contribution. ALG communicated with their members and other firms representing asbestos victims and solicited monies to employ and compensate counsel to represent them and their clients in the Texas case, *Larned, et al. v. Kohlberg, Kronis, Roberts & Co., et al.*, No. 13, 13354, Beaumont, Texas.

It appears ALG collected a total litigation fund of 1.5 million dollars.[2] It is to be noted not all law firms representing asbestos victims agreed to fund the *Larned* litigation. Thus, the plaintiffs in the *Larned* Texas litigation were selected asbestos victims whose legal counsel had funded the litigation and had hired and paid for separate or at least additional legal representation in that case.

When Hillsborough filed bankruptcy, the Texas case was stayed pursuant to Section 362(a) of the Bankruptcy Code. Hillsborough as Debtor/Plaintiff filed two adversary proceedings, Adv. No. 90–003 and Adv. No. 90–004.[3] In one adversary proceeding, Hillsborough sought to enjoin the *Larned* plaintiffs from proceeding in the Texas case. In the other adversary proceeding, Hillsborough sought declaratory relief that it was not liable for any asbestos claims.

ALG hired C & D/RGB to represent the Texas plaintiffs as defendants in the Hillsborough adversary proceedings. C & D/RGB has received over a half million dollars in compensation from the ALG fund between January and September 1990 as relates to the Hillsborough litigation. If appointed counsel for the creditors committee, C & D/RGB will undoubtedly seek fees from the estate at the same time it seeks further compensation from ALG for the Hillsborough representation.

Debtor, Celotex, was a pre-petition defendant in both the Texas case and the Hillsborough adversary proceeding. When Celotex filed bankruptcy, C & D/RGB sought to be appointed as legal counsel for the Official Asbestos Personal Injury Creditors Committee. This creditors committee represents a much larger group of asbestos personal injury claimants than those parties C & D/RGB represent in the Hillsborough adversary proceedings. Debtor estimates 140,000 pre-petition asbestos personal injury claimants.

The U.S. Trustee objects to the application of C & D/RGB on several grounds. First, the application and accompanying affidavits as required by the Bankruptcy

---

1. Affidavit of one of ALG's trustees states "this organization, which is unincorporated and which has no official by-laws, rules or regulations, serves as a vehicle to organize seminars and provide information to lawyers to help them in their representation of injured clients suffering from asbestos-related diseases."

2. From representation made to this Court at the hearing on the objections, it would appear the asbestos victims, whose counsel funded the piercing of the veil litigation, may have little knowledge of that funding; that they may be surcharged for such costs of litigation and the payment to counsel by these law firms for representation either in the Texas litigation or the adversary proceeding in the Hillsborough case.

3. For an extensive description of the adversary proceeding, *see, In re Hillsborough Holding*, 4 FLW Fed. B376 (Dec. 14, 1990).

Code and Rules do not set forth the unique representation of C & D/RGB in the Hillsborough case nor its receipt of compensation from the ALG litigation fund. Further, the U.S. Trustee believes C & D/RGB's representation of select defendants in the adversary proceedings is a direct conflict to representing the creditors committee in this case. Issues related to C & D/RGB's status as disinterested parties are also reflected in the objections. The basis for those objections is of similar concern to the Debtor and the Trade Creditors Committee.

■ As to the Official Asbestos Personal Injury Creditors Committee, the Court has been advised that while the committee is composed of asbestos personal injury claimants, the actual functioning members are the counsel for these claimants. At least three attorneys sitting on the committee are members of the law firms who contributed to ALG's funding of C & D/RGB's representation in Hillsborough. Other counsel on the committee did not contribute to the fund. It can be concluded their clients' interests were not represented in the Texas case or the Hillsborough adversary proceedings because of non-contribution. Considering the actual participants of the Official Asbestos Personal Injury Creditors Committee, the actual driving force behind the piercing of the corporate veil litigation and the hiring of committee legal representation, the activities appear to be lawyer driven. Notwithstanding that driving force, it does not appear these two groups, whether they be characterized as asbestos personal injury claimants or lawyers representing asbestos personal injury claimants, have the same interest, legal agenda or fiduciary duty as regards the committee. A creditors committee has a fiduciary duty to the individual members that committee represents. Counsel for the committee has a fiduciary duty to the committee and its constituency. These fiduciary duties cannot be misdirected by the relationship of the committee's counsel with other entities that have other considerations than the committee or its constituency. *In re Mesta Machine Co.,* 67 B.R. 151 (Bankr.W.D.Pa.1986); *In re Grant Broadcasting of Phila., Inc.,* 71 B.R. 655 (Bankr.E.D.Pa.1987). *See also, In re Proof of the Pudding, Inc.,* 3 B.R. 645 (Bankr.S.D.N.Y.1980).

Section 327 of the Bankruptcy Code establishes the initial criteria for the employment of professionals in a bankruptcy case. To be eligible, counsel cannot hold an adverse interest to the estate and must be a disinterested person. As to committee counsel, Section 1103(b) of the Bankruptcy Code [4] reinforces Section 327 by prohibiting counsel from representing the committee where counsel "represent[s] any other entity having an adverse interest in connection with the case." *See, In re Oliver's Stores, Inc.,* 79 B.R. 588 (Bankr.D.N.J.1987); *In re Saxon Industries, Inc.,* 29 B.R. 320 (Bankr.S.D.N.Y.1983).

Section 101(13)(E) of the Bankruptcy Code includes in its definition of "disinterested Person" one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors ..., by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker ..., or *for any other reason.*" (emphasis added). Title 11 U.S.C. § 101(13)(E).

■ This Court concludes the fairest reading of these sections is a contemplation by Congress that the bankruptcy court should oversee the broadest aspects of counsel's employment as it relates to any real and potential conflicts of interest. *See also, In re Arkansas Co., Inc.,* 798 F.2d 645 (3rd Cir.1986).

■ Basic potential conflicts are not the meat of this case. We are not concerned with the employment of counsel who previously represented the debtor and now seeks employment as the trustee's or debtor-in-possession's attorney. Nor are we concerned with an attorney's mere representation of a creditor who is now on the

---

**4.** The Court is well aware there is no longer a per se disqualification rule for dual representa-

tion. *In re Whitman,* 101 B.R. 37 (Bankr.N.D. Ind.1989).

creditor's committee. Such a velleity is not to be found here.

C & D/RGB suggests theirs is an ecumenical representation. The adversary proceeding defendants in Hillsborough supposedly have the same interests as the broad class of asbestos personal injury claimants who are the constituency of this creditors committee. Notwithstanding such a possibility, another interest must be placed into the equation, the all important interests of ALG, collectively and singly. ALG and its fund are the catalyst of conflict. It is the face of the creditors committee but not its members. It is the employer of C & D/RGB in Hillsborough and for the creditors committee but not a party in interest. ALG has been the independent funding source of C & D/RGB for nine or more months.[5] Its presence distorts the typical fiduciary relations between committee and counsel to a melange of interests. C & D/RGB has a fiduciary duty to the defendants in Hillsborough. An additional duty apparently arises to ALG because of their employment and payment to C & D/RGB. "The undersigned and their law firms [C & D/RGB] were retained early in the Hillsborough bankruptcy proceedings. They [C & D/RGB] were *retained by counsel* who were representing the class of plaintiffs alleged in the *Larned* action which was then pending in the state court in Texas".[6] (emphasis added).

Celotex's Official Asbestos Personal Injury Creditors Committee has a fiduciary duty to its constituency of which the Hillsborough defendants may be a part, however, those duties are not reciprocal from the Hillsborough defendants which have different goals than those of the creditors committee. Moreover, C & D/RGB cannot speak of the asbestos personal injury claimants' interests because they have not heard those interests. Those interests have been obscured by the appearance and voice of ALG which dominate the Texas and Hillsborough cases and appear to be dominating the Official Asbestos Personal Injury Creditors Committee. C & D/RGB is counsel for ALG who have inconsistent interests with the committee. C & D/RGB is seeking to serve more than one master. Under the facts herein, such is a conflict of interest. *See, Saxon Industries, Inc., supra* at 322.

> First, courts have expressed concern that the vigor of the lawyer's representation of one client may be diminished in an effort to avoid antagonizing the other client. The second consideration relates to the client's expectation of receiving the undivided loyalty of the lawyer. *American Bar Association Annotated Model Rules of Professional Conduct,* ABA Model Rule 1.7 (Conflict of Interest) (Comment on Loyalty to a Client), p. 73 (1984). 'Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities and interests ... [t]he critical [question to consider is] the likelihood that a conflict will eventuate, and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose causes of action that reasonably should be pursued on behalf of the client.'

*Oliver's Stores, Inc., supra* at 594; *see also, In re XGW Excavating Co.,* 111 B.R. 469 (Bankr.D.N.J.1990).

As stated, a creditor's committee has a fiduciary duty to its constituency. Committee counsel has a fiduciary duty to the committee and the creditors it represents. *Mesta Machine Co., supra* at 153, 158. Because in this case committee participation is not by the appointed members but by their legal representatives, an anomaly arises.[7] Each legal representative who

---

5. The creditors committee application is signed by a member of a law firm who is co-counsel in the Texas litigation and is assumed by the Court to be an ALG contributor, as are several other members of this committee who now seek to employ C & D/RGB as they did in Hillsborough.

6. [Second] affidavit of Inselbuch and Rydberg, Dec. 6, 1990, Pg. 2.

7. Section 1103(a) establishes the manner in which a committee may employ a professional. "At a scheduled meeting of a committee appointed under section 1102 ..., at which a majority of the members of such committee are

sits on the committee has a fiduciary duty to its own client/member as well as a fiduciary duty to the committee and each of its constituents. The legal representatives on the committee who are members of ALG or have contributed to the fund may have an additional fiduciary duty to those Hillsborough defendants they represent. From this perspective, this Court can observe a potential conflict on the part of those attorneys who sit on the Official Asbestos Personal Injury Creditors Committee as between their client, the committee, its members and defendants in Hillsborough. Because C & D/RGB has been employed by these same legal representatives both in Hillsborough and as creditor's committee counsel, C & D/RGB share in these potential conflicts.

█ Within this milieu, the Court is also concerned with the paucity of information in the C & D/RGB original application and affidavit as to the relationship between itself, ALG and the fund. The fund was not mentioned in the application or original affidavit. Its existence was brought to the Court's attention by the U.S. Trustee at the hearing on the objection. In the subsequent affidavit of C & D/RGB required by this Court, C & D/RGB states the existence of the fund was not relevant. The Court finds such characterization incredulous.

> It is the duty of the applicant to reveal all connections with the debtor, its creditors, and other parties-in-interest in the application for appointment. Bankruptcy Rule 2014; (cites omitted). Indeed, if the disclosures are not made at the time the application for appointment is filed, the Court will be unable to determine whether an adverse interest exists.

*In re Lee Way Holding Co.,* 100 B.R. 950, 955 (Bankr.S.D.Ohio 1989); *see also, In re Waterfall Village of Atlanta Ltd.,* 103 B.R. 340 (Bankr.N.D.Ga.1989). It is quite

clear the application and affidavits filed by C & D/RGB fall short of the standard[8] required by Bankruptcy Rule 2014.

The Court finds, because of the interconnection between C & D/RGB, members of ALG, the method of representation and compensation in the Hillsborough case, as outlined herein, C & D/RGB has an adverse interest to the creditors committee and its constituency. Whether the issue is an actual conflict of interest, a potential conflict of interest, or avoidance of the appearance of impropriety, such is apparent at every instance. "Thus, the integrity of the bankruptcy system demands that the professionals serving the committee not place themselves in a situation where their independence, loyalty and integrity can be questioned by the unsecured creditor body whom they represent." *Oliver's Stores, Inc., supra* at 597.

█ If the creditors committee's counsel is denied appointment in this case, most assuredly the creditors committee, as presently functioning, should be reorganized. Admittedly, Section 1102 of the Bankruptcy Code places the authority in the hands of the U.S. Trustee to appoint such a committee as we have here. "The only other statutory adjuration is that the membership of the committee must be 'representative' of the kind of claims represented by such committee, and if it is not 'representative', the Court on request and after notice and hearing may direct appropriate changes in its membership pursuant to 11 U.S.C. Section 1102(c)." *In re Daig Corp.,* 17 B.R. 41, 42 (Bankr.D.Minn.1981). The Court finds the present committee is made up of legal representatives of selected members of the committee and does not comply with Section 1102 of the Bankruptcy Code. These legal representatives have different fiduciary duties to their individual clients as distinct from that owed to the constituency of the committee. Therefore,

present ..." By the committee members' legal representatives taking on the members' role, has Section 1103(a) been complied with? Even so, is the selection by these legal representatives on the committee of their own retained counsel appropriate without consultation and disclosure to their respective client members, other members of the committee, and the constituents of

the committee? *Grant Broadcasting of Phila., Inc., supra* at 664.

8. "Where any of its transactions are challenged, the burden is on the fiduciary, not only to prove good faith of the challenged transaction, but also to show its inherent fairness from the viewpoint of those that fiduciary represents." *Mesta Machine, Co., supra* at 157.

the U.S. Trustee is directed to ensure the integrity of the committee process by requiring actual selected members of the Official Asbestos Personal Injury Creditors Committee to participate as contemplated by Section 1102 of the Bankruptcy Code.

In light of the fact the Debtor and the U.S. Trustee do not have the names and addresses of all pre-petition asbestos personal injury claimants and such fact limits the ability to establish a proper participation of members of that committee or communication to its constituency, this Court, upon the appropriate request of Debtor or the U.S. Trustee or any other party in interest, shall require any counsel representing asbestos personal injury claimants to provide this Court, the U.S. Trustee and the Debtor with the names and addresses of all asbestos personal injury claimants any law firm represents.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Objection of the U.S. Trustee to the Application of Official Asbestos Personal Injury Creditors Committee to Employ Caplin & Drysdale and Rydberg, Goldstein & Bolves as legal counsel is sustained. It is further

ORDERED, ADJUDGED AND DECREED the U.S. Trustee, within 20 days of the entry of this Order, shall report to this Court, the Debtor, and all creditors committees, the status of participation of the Official Asbestos Personal Injury Creditors Committee by selected asbestos personal injury claimants. It is further

ORDERED, ADJUDGED AND DECREED upon the request of the Debtor, the U.S. Trustee, or any party in interest, the Court will issue an order to all parties in interest, their representatives, or any known claimants or their counsel to provide the Debtor, the Court, and the U.S. Trustee with the names and addresses of all persons having pre-petition asbestos-related personal injury claims against the Debtor.

DONE AND ORDERED.